UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>   v.<br><br>COVIUS SERVICES, LLC,<br><br>                Defendant. | CASE NO: 2:23-CV-0186-TOR<br><br>ORDER DENYING SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion to for Summary Judgment (ECF No. 20). The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's motion is **DENIED**.

## BACKGROUND

This case arises out of claims related to discrimination under the Americans with Disabilities Act (ADA). Plaintiff, the Equal Employment Opportunity Commission, brought this suit pursuant to 42 U.S.C. § 12117(a) on behalf of Kelli Ebert ("Ms. Ebert") claiming Defendant, Covius Services, LLC, discriminated

ORDER DENYING SUMMARY JUDGMENT ~ 1

1  against Ms. Ebert based on her disability.  The relevant undisputed facts for this
2  motion are as follows.  Since before 2019, Ms. Ebert has suffered from chronic
3  migraines and fibromyalgia which have limited Ms. Ebert's major life activities
4  when untreated.  ECF No. 35 at ¶¶ 55a, 55b.  Ms. Ebert treats these medical
5  conditions with prescription pain medication which includes opioid medication.
6  *Id.* at ¶ 55c.
7        In 2019, Defendant bought and integrated a business in Spokane Valley
8  which became its Tax Department.  *Id.* at ¶¶ 1, 2.  Defendant hired two of the
9  former business' employees, Andrea Diaz ("Ms. Diaz") as Tax Department
10 Manager, and J. Alan Smelko ("Mr. Smelko") as a Non-Escrow Tax Supervisor.
11 *Id.* at ¶ 4.  Defendant contracted with a third-party recruiting agency, Aerotek, to
12 find candidates for positions within the Tax Department.  *Id.* at ¶ 35.  Defendant's
13 standard hiring process in 2019 and 2020 included a background check and a drug
14 screen.  *Id.* at ¶ 6.  Defendant partnered with a third-party vendor, Hire Right, to
15 perform the drug screenings.  ECF No. 35 at ¶ 8.  Hire Right relays the drug
16 screening results as either negative or positive to Defendant's Human Resources
17 Department.  *Id.* at ¶ 10.  Defendant laid out its drug and alcohol policies in its
18 2019 employee handbook which prohibited employees from being under the
19 influence of illicit drugs at work.  *Id.* at ¶ 15.
20       In March 2020, Aerotek recruiter, Haleigh Dobson (now "Richardson"),

referred Ms. Ebert for an interview with Ms. Diaz and Mr. Smelko for a position as a Non-Escrow Tax Specialist ("NETS I") with Defendant. *Id.* at ¶¶ 60, 61. Ms. Ebert had been working with Aerotek in looking for jobs within the area for some time before this referral. *Id.* at ¶ 57. She had also disclosed her use of pain medication to Aerotek. *Id.* Ms. Diaz and Mr. Smelko interviewed Ms. Ebert on March 6, 2020. ECF No. 35 at ¶ 67. During the interview, Ms. Ebert disclosed to Ms. Diaz and Mr. Smelko that she used pain management medications to treat her medical conditions. *Id.* at ¶ 75c. Mr. Smelko noted on his copy of Ms. Ebert's resume that Ms. Ebert used pain medication for chronic migraines. *Id.* at ¶ 94.

After the interview, Ms. Diaz and Mr. Smelko rated Ms. Ebert as a candidate on a scale from one to ten with a five as the minimum score needed for an applicant to be eligible for hire. *Id.* at ¶¶ 72, 96. Ms. Diaz rated Ms. Ebert as at least a five, and Mr. Smelko put her at under a four. *Id.* at ¶¶ 96, 97. They ultimately chose not to hire Ms. Ebert, and Ms. Diaz informed an Aerotek employee, Brittany Ostrander ("Ostrander"), of this decision a few days later. *Id.* at ¶ 102. Ostrander then spoke to Richardson about Ms. Diaz's feedback. *Id.* at ¶ 104. Richardson subsequently called Ms. Ebert on March 11, 2020 and allegedly left a voicemail explaining Defendant would not be moving forward with Ms. Ebert. *Id.* at ¶ 105. The contents of the voicemail are disputed; however, Richardson sent a follow up email the following day explaining that Defendant's

ORDER DENYING SUMMARY JUDGMENT ~ 3

prescreening process does not allow for the use pain medication and that was the reason she was not selected. *Id.* at ¶ 106. The parties dispute whether that was the actual feedback given to Richardson. *Id.* at ¶ 107. Richardson finally spoke on the phone with Ms. Ebert on March 12 about Defendant's decision not to hire her. *Id.* at ¶ 121.

During this time Ms. Ebert had also been looking at another job opportunity with a company called Alorica. Ms. Ebert interviewed for a customer service position with Alorica on March 9, 2020 and received an offer of employment for the position on March 10. ECF No. 35 at ¶¶ 118, 119. Ms. Ebert accepted the offer on March 11. *Id.* at ¶ 120. However, the position was ultimately postponed indefinitely around March 23, 2020 due to the COVID pandemic. *Id.* at ¶ 124a. Ms. Ebert obtained Pandemic Unemployment Assistance benefits in connection with her termination with Alorica. *Id.* at ¶ 125. Eventually, Ms. Ebert got a part-time job at Value Village until she was hired on by another company, Lincare, in December 2020. *Id.* at ¶¶ 143, 146a.

As for Defendant, it ultimately hired another candidate who was interviewed the date before Ms. Ebert, Rosalee Sharnetsky ("Ms. Sharnetsky"), for a NETS I position. *Id.* at ¶ 123b. In 2023, Defendant sold the Tax Department to another company, CoreLogic, and ceased to have any physical worksite within Washington State by January 2023. *Id.* at ¶¶ 147, 149. Defendant

does have remote employees still working in Washington, however, Ms. Diaz and Mr. Smelko are no longer employed with Defendant. *Id.* at ¶¶ 149a, 150.

## DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in

favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B. Injunctive relief claim**

Defendant seeks summary judgment on Plaintiff's request for injunctive relief on the basis that it is moot. ECF No. 20 at 2-7. "An action is moot if the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987). Defendant appears to be arguing both that the request for injunctive relief is moot because Plaintiff failed to show injunctive relief is warranted, and it is moot under the voluntary cessation doctrine. ECF No. 20 at 2-7. While these arguments are intertwined in Defendant's motion, they require separate discussions.

1. <u>Voluntary cessation</u>

Defendant argues the ADA claim is legally moot under the voluntary cessation doctrine because (1) there is no reasonable expectation that the alleged violation will reoccur and (2) the violation's effects were superseded by

1 intervening events. ECF No. 20 at 4. Voluntary cessation of challenged conduct
2 ordinarily does not render a case moot unless the Court finds "(1) it can be said
3 with assurance that 'there is no reasonable expectation . . .' that the alleged
4 violation will recur, and (2) interim relief or events have completely and
5 irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v.*
6 *Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345
7 U.S. 629, 897 (1953)) (internal citations omitted). The party asserting mootness
8 bears the burden of meeting this stringent standard. *Rosebrock v. Mathis*, 745 F.3d
9 963, 971 (9th Cir. 2014).

10     Defendant contends the alleged discriminatory practice cannot reasonably
11 reoccur because its Tax Department was dissolved in 2022 after it was sold to
12 another business, therefore eliminating all related roles, and resulting with no
13 physical business operations ongoing in Washington. ECF No. at 3. Although it
14 concedes in a footnote that at least a dozen remote workers still reside in
15 Washington. *Id.* Additionally, Defendant argues it has strengthened its anti-
16 discrimination policies and procedures since 2020, further mitigating a chance of
17 recurrence. *Id.* at 4. Finally, Defendant cites to a district court case out of the
18 First Circuit with somewhat similar facts that held injunctive relief improper
19 where the EEOC failed to show a cognizable danger of future religious
20 discrimination of a similar kind in defendant's remaining locations. *EEOC v.*

ORDER DENYING SUMMARY JUDGMENT ~ 7

*Aviation Port Servs., LLC*, 2020 WL 1550564, at *12 (D. Mass. April 1, 2020).

In its response, Plaintiff raises several counter arguments. First, Plaintiff concedes that from the known facts, Ms. Ebert is unlikely to benefit personally from injunctive relief, but rather contends Defendant has not met its burden in showing clear evidence that future discrimination against others will not reoccur. *Id.* at 6. Plaintiff claims Defendant continues to rely on the same drug testing policy it relied on to discriminate against Plaintiff without any adequate managerial training on proper anti-discrimination procedures. *Id.* at 7. Plaintiff argues the only change in language after Ms. Ebert's rejection was not substantive in nature. Defendant changed "[a]ll offers of employment are conditional upon a negative test result" to "[a]ll offers of employment are conditional upon passing the drug test requirements." *Id.* Finally, Plaintiff challenges Defendant's reliance on the burden of proof standard laid out in *Aviation Port Services* as incorrect. *Id.* at 8.

The Court agrees with Plaintiff that Defendant's reliance on *Aviation Port Services* in arguing mootness is misplaced. That court denied a request for injunctive relief based on the merits of the request, not because it was deemed moot. The two concepts are distinct. *See SCM Corp. v. FTC*, 565 F.2d 907, 812 (2d Cir. 1977) ("While in many cases there will be no practical difference between dismissing a case for mootness and denying a request for injunctive relief,

ORDER DENYING SUMMARY JUDGMENT ~ 8

nevertheless, the two concepts are analytically distinguishable and a court could find that a case is not moot and yet deny injunctive relief."). The burden of showing Defendant's change in policy or conduct renders injunctive relief moot lays with Defendant, while the burden of showing injunctive relief is needed lays with Plaintiff. *United States v. W. T. Grant Co.*, 345 U.S. at 897-898. Thus, Defendant's argument that Plaintiff failed to show evidence of a future danger of reoccurrence fails for purposes of the voluntary cessation claim.

Defendant's argument that no expectation of reoccurrence exists because the closure of its office site in Washington, the departure of Ms. Diaz and Mr. Smelko, and the strengthening of its anti-discrimination measures also fails.

First, Defendant's drug testing policy applies to all applicants and employees, thus the fact that no ongoing operations now exist in Washington does not preclude a reoccurrence of discrimination of applicants outside of Washington. ECF No. 29-1 at 10-11. Defendant did not cease operations in its entirety as was the situation in Defendant's referenced case, *Kohler v. Southland Foods, Inc.*, 459 F. App'x 617, 2 (9th Cir. 2011).

Next, the departure of Ms. Diaz and Mr. Smelko likewise does not preclude reoccurrence. The core of Plaintiff's argument is that Defendant's drug testing policies are problematic and personnel training inadequate. ECF No. 27 at 7. If anything, Ms. Diaz's alleged rejection of Ms. Ebert on the basis she would fail a

ORDER DENYING SUMMARY JUDGMENT ~ 9

drug test in violation of Defendant's policy supports Plaintiff's argument of inadequate training and/or hiring policies.

Finally, Defendant's claim that "Covius has since continued to strengthen its anti-discrimination measures and HR policies and procedures since 2020" is also unavailing. ECF No. 20 at 4. Defendant makes no argument on how the policies and procedures have changed in such a way to make reoccurrence reasonably unlikely. A conclusory statement without support is insufficient. Thus, Defendant has not met the first required prong of the voluntary cessation doctrine which makes analysis of the second prong unnecessary.

2. Relief on the merits

Defendant's argument that Plaintiff's claim is moot because it failed to show a cognizable danger of future disability-related discrimination by Defendant, relates to the merits of injunctive relief. Such an argument is premature where Defendant's liability remains an open question. *See EEOC v. BNSF Railway Co.*, 902 F.3d 916, 928 ("Because the district court had already held that BNSF had violated the ADA and because it found that BNSF had no intention of ceasing its unlawful practice, the district court determined that an injunction was authorized by statute."); *EEOC v. Cottonwood Fin. Wash., LLC*, 2010 WL 5300555, at *12 (E.D. Wash. Dec. 20, 2010) ("[T]he Court finds it appropriate to withhold a decision relating to the EEOC's permanent injunction request until the conclusion

ORDER DENYING SUMMARY JUDGMENT ~ 10

of the evidence."); *Goodyear Aerospace Corp.*, 813 F.2d at 1544 ("Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination.").

### C. Discrimination claim

Defendant next challenges Plaintiff's discrimination claim. Defendant contends that even if Plaintiff was qualified for the position,[1] it cannot show Ms. Ebert's disability was the but-for cause of Defendant's decision not to hire her. ECF No. 20 at 12. The Ninth Circuit requires that a plaintiff bringing a claim under 42 U.S.C. § 12112 of the ADA "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). Plaintiff's contention that Ms. Ebert's disability need not have been *the* but-for cause of Defendant's decision is contrary to the Ninth Circuit's exact language stating otherwise. *See, e.g.*, *Pherigo v. City of Burley*, 2023 WL 3231271, at *7 (D. Idaho May 3, 2023) ("While Title VII only requires *a* but for cause, Ninth Circuit caselaw requires that the disability be *the* but for cause under the ADA.").

Defendant argues Plaintiff cannot possibly show Ms. Ebert's disability

---

[1] Defendant concedes in its reply that Plaintiff raised an issue of material fact as to whether Ms. Ebert was qualified for the position. ECF No. 33 at 5-6.

ORDER DENYING SUMMARY JUDGMENT ~ 11

1  meets the but-for cause standard because Defendant interviewed and hired another
2  disabled candidate within the same timeframe who was more qualified.  ECF No.
3  20 at 13.  And similarly, the other candidate, Ms. Sharnetsky, also disclosed her
4  disability during her interview.  However, the parties dispute Defendant's
5  reasoning behind the originally proposed start date of Ms. Sharnetsky.  Ms.
6  Sharnetsky informed Defendant during the interview, which occurred on March 5,
7  2020, she was scheduled to get a hand surgery related to her disability on March
8  16, 2020 which afterward would require hand therapy twice a week for a few
9  weeks.  ECF Nos. 35 at 53, 61, 29-2 at 43.  Ms. Diaz noted this on Ms.
10 Sharnetsky's resume during the interview.  ECF No. 29-2 at 43.  She also noted
11 March 30, 2020 as a potential start date.  *Id.*  Plaintiff alleges this date was selected
12 due to Ms. Sharnetsky's disability, while Defendant argues it was most likely
13 written down as the earliest possible start date due to typical onboarding
14 procedures as Ms. Diaz later testified to.  ECF Nos. 27 at 15, 33 at 8.  The Court
15 finds the notes on Ms. Sharnetsky's resume made during the interview raise a
16 genuine dispute in fact as to whether Defendant hired Ms. Sharnetsky despite her
17 hand impairment or only did so because the hand impairment was expected to be
18 healed by her start date.  Finding the latter would support Plaintiff's claim that
19 Defendant considered her disability in choosing not to hire her.  Likewise,
20 Defendant's argument that Ms. Sharnetsky was selected because she was more

ORDER DENYING SUMMARY JUDGMENT ~ 12

qualified than Ms. Ebert is not dispositive on the issue because Defendant had two identical positions available at that time. ECF No. 35 at 52.

Therefore, the Court must deny Defendant's request for summary judgment on the discrimination claim.

**D. Punitive damages**

Defendant seeks summary judgment as to possible punitive damages. Punitive damages may be awarded to a plaintiff pursuant to 42 U.S.C. § 1981a(b)(1) where an employer engaged in a discriminatory practice with "malice or with reckless indifference to the [plaintiff's] federally protected rights." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999); 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535. However, an "employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Id.* at 545 (quoting *Kolstad v. Am. Dental Ass'n*, 139 F.3d 958, 974 (D.C. Cir. 1998), *vacated*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999)).

Defendant asserts that to establish a reckless indifference, Plaintiff must show a complete failure in policy or that someone above the hiring personnel, Ms.

ORDER DENYING SUMMARY JUDGMENT ~ 13

Diaz and Mr. Smelko, was aware of their allegedly discriminatory conduct. ECF No. 20 at 14. Defendant argues Plaintiff cannot show anyone above Ms. Diaz and Mr. Smelko knew of any such discriminatory intent because Ms. Ebert never complained of the discrimination until her EEOC charge. *Id.* Further, Defendant made "good-faith efforts" through maintaining and updating it anti-discrimination and hiring policies, engaged in routine code of conduct trainings, and made Mr. Smelko and Ms. Diaz aware of these policies and trainings upon hiring them. *Id.* Finally, Defendant argues that even if Mr. Smelko and Ms. Diaz did act with the requisite intent, punitive damages are not warranted against Defendant as the employer for an isolated incident at a now closed facility by individuals no longer employed with Defendant. *Id.* at 14-15.

Plaintiff does not challenge Defendant's contention that no higher up personnel were aware of Ms. Diaz and Mr. Smelko's alleged discriminatory conduct, but does contest Defendant's "good-faith efforts" argument. Plaintiff argues Defendant did not train or convey information on the ADA to its employees as evidenced by Mr. Smelko or Ms. Diaz's failure to recall any such training. ECF No. 27 at 17. Additionally, Plaintiff contends Defendant's drug policy had no exceptions for prescription drug use nor trained its hiring managers that such an exception exists. *Id.* Further, Defendant's code of conduct training contains no substantive anti-discrimination or ADA training. *Id.* Plaintiff also argues Ms.

ORDER DENYING SUMMARY JUDGMENT ~ 14

Ebert's discrimination was not an isolated incident because evidence indicates Ms. Sharnetsky was subjected to similar treatment. *Id.* Finally, Plaintiff claims Defendant learned during an internal investigation of Ms. Ebert's claim that the third-party recruiting agency had emailed Ms. Ebert after the interview informing her Defendant would not be hiring her because of her taking pain medication. *Id.* Plaintiff alleges Defendant's failure to disclose this information but instead present a document signed by Ms. Diaz stating she chose not to hire Ms. Ebert based on inconsistencies in her resume is evidence of Defendant's attempt to cover up the discriminatory conduct. *Id.*

The Court agrees with Plaintiff that punitive damages should be left to the jury. In viewing the facts in light most favorable to Plaintiff, sufficient evidence exists that creates a question of whether Defendant attempted to cover up the allegedly discriminatory conduct of its hiring managers. Such evidence supports Plaintiff's claim that Defendant acted with reckless indifference to Ms. Ebert's federally protected rights and lacked a good-faith defense. *EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 993 (9th Cir. 1998) ("[T]he evidence regarding the attempts by Wal–Mart managers to cover up their discriminatory conduct supports the EEOC's claim of reckless indifference to Stern's federally protected rights.").

E. **Economic damages**

Defendant argues Plaintiff is not entitled to back pay economic damages

ORDER DENYING SUMMARY JUDGMENT ~ 15

1  because she accepted a position with another employer before finding out she was
2  not being offered the position with Defendant.  ECF No. 20 at 16.  "A finding of
3  unlawful discrimination requires an award of back pay unless reasons exist 'which,
4  if applied generally, would not frustrate the central statutory purposes of
5  eradicating discrimination throughout the economy and making persons whole for
6  injuries suffered through past discrimination.'"  *Sangster v. United Air Lines, Inc.*,
7  633 F.2d 864, 868 (9th Cir. 1980) (quoting *Albemarle Paper Co. v. Moody*, 422
8  U.S. 405, 417-18 (1975)).  The ADA incorporates the back pay provisions of Title
9  VII. *See* 42 U.S.C. § 12117(a).  "Absent compelling circumstances, when an
10 employer has refused to hire an employee in violation of that employee's rights
11 under Title VII, the court should compute the backpay award from the date of the
12 discriminatory act until the date of final judgment."  *Thorne v. City of El Segundo*,
13 802 F.2d 1131, 1136 (9th Cir. 1986).

14      The Court finds no such compelling circumstances exist in this case to
15 preclude back pay.  Defendant's reliance on *Goodyear* in arguing Ms. Ebert is
16 already whole is misplaced.  Ms. Ebert did not enter into a private settlement and
17 "contract away her right to back pay" with Defendant as was the case in *Goodyear*.
18 *Goodyear*, 813 F.2d at 1543.

19      Additionally, Defendant's contention that Ms. Ebert accepting another
20 position prior to learning of her rejection by Defendant severed the causal link

1  between the alleged discrimination and any lost wages is also unpersuasive for two

2  reasons.  First, Defendant cites to no authority permitting denial of backpack under

3  similar circumstances.  Back pay may be limited where a willful loss of earnings

4  occurs or a plaintiff failed to mitigate damages by seeking other employment.

5  *Sangster*, 633 F.2d at 868 ("[C]ourts have long held that back pay is not to be

6  awarded when the evidence shows a willful loss of earnings."); *Ford Motor Co. v.*

7  *EEOC*, 458 U.S. 219, 231 ("Although the unemployed or underemployed claimant

8  need not go into another line of work, accept a demotion, or take a demeaning

9  position, he forfeits his right to backpay if he refuses a job substantially equivalent

10 to the one he was denied.").  Further, Ms. Ebert's loss of employment with Alorica

11 cannot be a superseding cause of injury because the injury was Defendant's alleged

12 discrimination of Ms. Ebert due to her disability.  The injury was not Ms. Eber

13 being unemployed.

14 **Mitigating efforts**

15 Defendant's last argument is that even if Ms. Ebert is entitled to back pay,

16 she failed to adequately mitigate damages.  ECF No. 20 at 18.  Defendant argues

17 that after Alorica renewed the offer of employment to Ms. Ebert after the previous

18 March 2020 agreement was terminated due to the COVID pandemic, Ms. Ebert

19 withdrew her candidacy on the basis she could not work from home because of her

20 slow internet.  *Id.* at 18-19.  Defendant also points to Ms. Ebert withdrawing her

1  candidacy from a position with Cigna a month later for the same reason. *Id.* at 10.
2  Defendant claims this evidences a failure to mitigate because Ms. Ebert could have
3  upgraded her internet speed with her provider. By refusing to take fully remote
4  positions, Ms. Ebert artificially limited her job search to in-person positions that
5  were difficult to come by during the pandemic. *Id.* at 19.

6  Plaintiff contends Defendant's arguments fail to meet its burden showing the
7  undisputed facts unequivocally reveal the availability of substantially equivalent
8  jobs during the time in question. ECF No. 27 at 21. Indeed, Defendant does not
9  explain how both the Alorica and Cigna jobs qualified as substantially equivalent
10 jobs that Ms. Ebert was required to accept to mitigate damages. Further,
11 Defendant presented no substantially equivalent positions that were available
12 during that time. In fact, it is undisputed that Ms. Ebert searched for in person
13 work while she was receiving unemployment benefits and even obtained part-time
14 employment at a local Value Village in June 2020. ECF No. 35 at 152. While
15 working part-time, Ms. Ebert continued to search for work as evidenced by her
16 actions of withdrawing her candidacy from Alorica and Cigna in September and
17 October 2020. *Id.* at 153. She eventually obtained a position with Lincare in
18 December 2020 and resigned from her position with Value Village. *Id.* Ms. Ebert
19 did not fail to look for work and whether substantially equivalent positions were
20 available before December 2020 is a question of fact not ripe for summary

ORDER DENYING SUMMARY JUDGMENT ~ 18

judgment. However, the Court does hold that any possible back pay has an end date of December 21, 2020, the date the parties agree Ms. Ebert began a substantially equivalent position at Lincare. *Id.*

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment as to all of the challenged claims except the December 21, 2020 cutoff date for back pay.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** December 11, 2024.

*[signature]*
THOMAS O. RICE
United States District Judge